Connie MILLER, Appellant
(Plaintiff Below),

v.

Danny YODER, Appellee
(Defendant Below).

No. 27A02–8608–CV–299.

Court of Appeals of Indiana,
Second District.

Nov. 30, 1987.

Arden W. Zobrosky, Marion, for appellant.

Herbert A. Spitzer, Jr., Browne Spitzer Herriman Browne Stephenson & Holderead, Marion, for appellee.

SHIELDS, Presiding Judge.

Connie Miller appeals the grant of summary judgment in favor of Danny Yoder. Miller seeks to hold Yoder liable for injuries she sustained on April 29, 1983, while a passenger in Yoder's vehicle. The single issue on appeal is whether, as a matter of law, Yoder's operation of his vehicle failed to constitute wanton misconduct.

We affirm.

Connie Miller was riding with Danny Yoder in his vehicle from Marion to Muncie, via Hartford City, Indiana, over roads familiar to Yoder. During the course of the trip Yoder occasionally failed to stop at stop signs on county road intersections choosing, instead, to "slow down, make sure everything was all right, then put it in second gear, and then right up into third gear.... Keep it about fifteen mile an hour the whole time." Record at 189. In response to Miller's complaints, Yoder responded he would "stop twice the next time." Record at 221.

Also, Yoder exceeded the county road speed limit by at least ten to fifteen miles per hour despite repeated requests by Miller to slow down. Miller acknowledged that when Yoder exceeded the speed limit, as she claimed he frequently did, "it wasn't as if he was just going to say, 'I'm gonna drive this fast just so I'm doing something wrong.' It was just that he would get where he was going a little bit faster." Record at 167–77.

Miller described the circumstances surrounding the accident as follows:

"[W]hen we got into Hartford City, traffic was really backed up and blocked and he likes to get real close to people and, you know, they'd get started up and he'd be right on their rear-end, and that's—I remember right before the accident, we were in front of this Chevrolet—I think Chevrolet dealership and we were at a stop light, and it had turned green and he started going and then he said something about a color of a car, because it was like a bronze or something and he turned—you know, he was like turned around looking back to see it, like this, and I think he had his arm up like this and I turned around on my way and did the same thing, and he had it in first gear and I guess he put the clutch in, because he was planning on shifting, and when he did that, all I remember after that point is just hitting the car in front of us. I don't remember even seeing us hit, because I was still turned and he was still turned ... His body was faced completely to the right."

Record at 189–90.

Summary judgment is appropriate only when the pleadings, depositions, answer to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Beckett v. Clinton Prairie School Corp.,* (1986), Ind.App., 494 N.E.2d 988. The burden is upon the moving party to establish the lack of a genuine issue as to any material fact. The court liberally views all evidence in the light most favorable to the non-movant and resolves any doubt as to a fact, or the inferences to be drawn therefrom, in favor of the non-movant. *Brown v. N.I.P.S.C.* (1986), Ind.App., 496 N.E.2d 794. The standard of review for this court is the same as for the trial court. *Rediehs Express, Inc. v. Maple* (1986), Ind.App., 491 N.E.2d 1006. In the present case, the trial court's grant of summary judgment is proper only if the supporting material would require a reasonable person, as a matter of law, to conclude that Yoder's

conduct did not constitute wanton misconduct.[1]

■ To be guilty of wanton misconduct a host-driver must be conscious of his conduct, must knowingly or with reckless indifference assert his interests above the safety of his guest passengers, and must know that his conduct subjects his guests to a probability of injury. *Mazza v. Kelly* (1970), 147 Ind.App. 33, 258 N.E.2d 171.

■ Applying this standard for wanton misconduct to the facts as alleged by Miller we can only conclude, as did the trial court that, as a matter of law, Yoder's misconduct was not wanton.

We assume Yoder's negligence in the operation of his vehicle was the proximate cause of Miller's injuries. However, his negligence was not accompanied by the perverseness required for wanton misconduct. At most, his prior conduct, even in combination with the conduct which caused the injury, was negligent. He failed, over Miller's objection, to make complete stops as required by law at stop-sign controlled intersections. However, according to Miller, he did so only after reducing his speed and ascertaining the absence of other traffic. He also exceeded the speed limit on county roads. However, there is no claim the speed itself was excessive considering the conditions of the roads, the weather, or the traffic. In addition, again according to Miller, the speed was not an effort by Yoder to "[do] something wrong." Immediately preceding the accident, Yoder was driving in heavy, backed-up, start-stop traffic on Friday evening at "work let-out time." Record at 223. There is no claim he was speeding while driving in this traffic. Miller complains "he likes to get real close to people and, you know, they'd get started up and he'd be right on their rearend". However, close proximity of vehicles is the usual circumstance when vehicles are stopping and starting in bumper-to-bumper traffic as described by Miller.

Finally, turning to the conduct which resulted in the accident, Yoder was in a line of traffic that had stopped for a red light at an intersection. When the light turned green, Yoder started his vehicle, turned his attention away from the preceding traffic and hit the car immediately preceding his vehicle. There is no claim any other conduct by Yoder, such as a jack-rabbit start, occasioned the accident.

A case which provides an analogous fact situation is *Becker v. Strater* (1947), 117 Ind.App. 504, 72 N.E.2d 580. In *Becker*, this court affirmed a directed verdict in favor of a host driver whose driving was found to be only negligent. While approaching an intersection, the driver turned his head to look at some cattle in a field, failed to stop at a stop sign, and failed to observe an approaching car. This court concluded:

"There was nothing about appellee's conduct suggesting reckless abandon. He did not rush into the intersection knowing that other cars were approaching. All the evidence is to the effect that he had no knowledge of the approach of the automobile which struck him. He was not warned either by others or by his own senses."

*Becker*, 72 N.E.2d at 581. Similarly, Yoder did not rush into the intersection. Yoder turned his head and his attention from the road ahead to look at a vehicle and thus was not warned by his senses that the car in front of him had again stopped. Miller also did not warn him since she, too, was looking away from the road. Under the circumstances, although his conduct was negligent, it was not wanton. His inattention was not a manifestation of arrogant recklessness nor is there any other fact

---

1. The Indiana Guest Act, as it existed on the date of the accident, prior to the 1984 amendment, is controlling:

"The owner, operator, or person responsible for the operation of a motor vehicle shall not be liable for loss or damage arising from injuries to or death of a guest, while being transported without payment therefor, in or upon such motor vehicle resulting from the operation thereof, unless such injuries or death are caused by the wanton or willful misconduct of such operator, owner, or person responsible for the operation of such vehicle."

IC 9–3–3–1 (West's 1979).

from which that requisite arrogant recklessness could reasonably be inferred.

Judgment affirmed.

SULLIVAN and STATON, JJ., concurs.